IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MANUEL D. SOUND and THOMPSON PHILLIP, each individually and on behalf of those persons similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>LILLIAN B. KOLLER, in her official capacity as Director of the State of Hawaii, Department of Human Services, and KENNETH FINK, in his official capacity as State of Hawaii, Department of Human Services, Med-QUEST Division Administrator,<br><br>      Defendants.<br>_____ | CIVIL NO. 09-00409 JMS-KSC<br><br>REPORT OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES BE GRANTED IN PART AND DENIED IN PART |

REPORT OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES BE
GRANTED IN PART AND DENIED IN PART

Before the Court is Plaintiffs' Motion for

Attorneys' Fees and Non-Taxable Expenses, filed January

26, 2010.  On February 2, 2010, Plaintiffs filed a

Statement of Consultation.  Defendants filed their

Opposition on February 3, 2010.  Plaintiffs filed their

Reply on February 17, 2010.

The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  After reviewing the Motion, the supporting and opposing memoranda, and the relevant case law, the Court FINDS and RECOMMENDS that the Motion be GRANTED IN PART and DENIED IN PART and that the district court award Plaintiffs **$55,883.47** in attorneys' fees and **$3,046.36** in expenses, for a total of **$58,929.83**.

<u>BACKGROUND</u>

Plaintiffs commenced the instant action on August 31, 2009, alleging violations of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment that resulted from Defendants' decision to change the medical benefits offered to certain individuals residing in Hawaii under the Compact of Free Association ("COFA"), as well as immigrants who have been U.S. residents for less than five years.

Prior to August 2009, these individuals received health care benefits under State-funded programs, including QUEST, QexA, QUEST-Net, QUEST-ACT, SHOTT, or fee-for service programs.  However, Defendants planned to disenroll these individuals from such programs and make available a new program - Basic Health Hawaii ("BHH") - which provides less benefits.

On the same day they filed their Complaint, Plaintiffs filed a Motion for Temporary Restraining Order.

On September 1, 2009, U.S. District Judge J. Michael Seabright issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Temporary Restraining Order ("TRO").  After considering the applicable factors for the issuance of a temporary restraining order, Judge Seabright concluded that Plaintiffs were entitled to relief.  Judge Seabright specifically ordered Defendants to:

> 1. Stop disenrolling COFA residents and New Residents from the State-funded health programs in which they were participating prior to August 1, 2009; and

3

> 2. re-enroll all COFA residents and New
> Residents who were disenrolled based on
> their status as COFA residents and/or New
> Residents in the applicable QUEST,
> QUEST-Net, QUEST-ACE, QexA, SHOTT, or
> fee-for service programs.

TRO at 11.  Judge Seabright denied Plaintiff's request

for an order requiring Defendants to continue to enroll

all COFA residents and New Residents in the applicable

old programs because Plaintiffs failed to establish

irreparable harm to those individuals who were not

receiving benefits under the old program.  <u>Id.</u> at 11-

12.

On September 30, 2009, Judge Seabright approved

a Stipulation for Extension of Temporary Restraining

Order ("TRO Stipulation").

On January 12, 2010, Judge Seabright approved a

Stipulation for Voluntary Dismissal Without Prejudice.

This Motion followed.

<u>DISCUSSION</u>

I.  <u>Entitlement to Attorneys' Fees</u>

Plaintiffs submit that they are entitled to

attorneys' fees under 42 U.S.C. § 1988(b) because they

4

are the "prevailing party" in this 42 U.S.C. § 1983
action.  Plaintiffs assert that 1) they succeeded on
the merits of their due process claim by obtaining a
TRO and TRO Stipulation; 2) the TRO materially altered
the legal relationship between the parties; and 3) the
TRO and TRO Stipulation directly benefitted Plaintiffs.

        Defendants counter that Plaintiffs are not the
"prevailing party" because the TRO merely preserved the
status quo; the Department of Human Services
voluntarily decided to review the BHH program; and
Plaintiffs did not obtain a judgment on the merits.

        Section 1988 provides, in pertinent part:  "In
any action or proceeding to enforce a provision of
section[] . . . 1983 . . . the court, in its
discretion, may allow the prevailing party, other than
the United States, a reasonable attorney's fee as part
of the costs."  42 U.S.C. § 1988(b).  To be considered
a "prevailing party," a party must "succeed on any
significant issue in litigation which achieves some of
the benefit the parties sought in bringing suit."

5

Farrar v. Hobby, 506 U.S. 103, 109 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1160 (9th Cir. 2000). In other words, a plaintiff "'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar, 506 U.S. at 111-12; UFO Chuting of Hawaii, Inc. v. Smith, 508 F.3d 1189, 1197 (9th Cir. 2007).

Although the Supreme Court has held that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant," Farrar, 506 U.S. at 113,[1] the Ninth Circuit has made clear that in certain circumstances, "prevailing party" status may be accorded to those who obtain injunctive relief.  See

---

[1]  Farrar v. Hobby did not involve "prevailing party" status in the context of injunctive relief, but rather, whether a party who is awarded nominal damages following trial is a "prevailing party."  506 U.S. 103.

6

UFO, 508 F.3d at 1197 (defining prevailing party as one who "achieves the objective of its suit by means of an injunction issued by the district court"); Williams v. Alioto, 625 F.2d 845, 847 (9th Cir. 1980) (per curiam) (holding that a plaintiff who obtains a preliminary injunction prevails on at least some of the merits of its claims); Harris v. McCarthy, 790 F.2d 753, 757 (9th Cir. 1986) (issuance of preliminary injunction, without more, warranted an award of attorneys' fees because the plaintiffs succeeded on a significant issue in the litigation and achieved some of the benefit they sought in bringing suit).

Plaintiffs submit that the stipulated extension of the TRO was tantamount to obtaining preliminary injunctive relief.  The Court agrees.  A TRO can serve the same function as a preliminary injunction. Fitzharris v. Wolff, 702 F.2d 836, 838-39 (9th Cir. 1983).  In the present case, Judge Seabright issued the TRO on September 1, 2009, approved the extension of the TRO on September 30, 2009, and the TRO remained in

effect until January 12, 2010, when the parties
stipulated to dismiss the case without prejudice.  The
TRO therefore served the same function as a preliminary
injunction, and Plaintiff obtained some of the benefit
they sought in bringing suit.  Even if the extended TRO
was not the equivalent of a preliminary injunction,
Plaintiffs can still be considered a "prevailing
party," where, as here, the TRO did more than preserve
the status quo.  LSO, 205 F.3d at 1161.

In the Complaint, Plaintiffs allege that
Defendants violated the Due Process Clause of the
Fourteenth Amendment by failing to provide
constitutionally adequate notice before disenrolling
individuals from health benefit programs.[2]  Compl. at ¶
25.  As part of the relief sought, Plaintiffs requested
that the Court grant injunctive relief to cease
Defendants' violations of Plaintiffs' constitutional

---

[2]   Plaintiffs also allege violations of the Equal
Protection Clause of the Fourteenth Amendment, but that
claim was not subject to the "likelihood of success"
analysis by Judge Seabright, given the fact that
limiting the analysis to the Due Process Claim would
not affect the scope of the TRO.  TRO at 3 n.1.

rights.   Although neither the TRO nor TRO Stipulation
were decisions on the merits of the Due Process Claim,
they granted Plaintiff actual relief on the merits of
said claim.   Judge Seabright concluded that, among
other things, Plaintiffs had demonstrated a likelihood
of success on their claim and he enjoined Defendants
from disenrolling individuals from the subject State-
funded health programs and ordered Defendants to re-
enroll those individuals who were disenrolled.   The TRO
Stipulation went one step further, with an agreement to
extend the TRO until Defendants have completed the
Hawaii Administrative Procedures Act ("HAPP")
rulemaking process and provided notice of adverse
changes to eligibility and/or benefits to individuals
participating in health benefits program under
Defendants' pre-existing policies.   TRO Stipulation at
4.   Accordingly, the Court finds that Plaintiffs
obtained actual relief on the merits of their Due
Process claim.

The relief obtained here materially altered the

legal relationship between the parties by modifying

Defendants' behavior in a way that directly benefitted

Plaintiffs.  As already discussed, Plaintiffs need not

secure a final judgment on the merits, enforceable

against Defendants,[3] to attain "prevailing party"

status.  Defendants dispute Plaintiffs' satisfaction of

the "prevailing party" test[4] and direct the Court to a

Fifth Circuit case, Foreman v. Dallas County, 193 F.3d

314 (5th Cir. 1999), abrogated by Bailey v.

Mississippi, 407 F.3d 684 (5th Cir. 2005).  Foreman is

not binding on this Court, nor is it instructive, given

Ninth Circuit precedent recognizing that a TRO may

confer "prevailing party" status if it alters the legal

relationship between the parties.  LSO, 205 F.3d at

---

[3]  Even so, the parties clearly contemplated that
should Defendants fail to complete the rulemaking
process or timely provide constitutionally adequate
notice of adverse changes to eligibility and/or
benefits to individuals participating in health benefit
programs, Plaintiffs would seek relief from the Court.

[4]  Part of Defendants' argument, though misplaced,
is that Plaintiffs incorrectly rely on the "catalyst
theory" as a basis for fees.  The Court declines to
address this argument because Plaintiffs are not
relying on the "catalyst theory."

1160-61.

Here, the TRO enjoined Defendants from taking further action to deprive Plaintiffs of their health benefits and required Defendants to restore Plaintiffs' and other individuals' access to programs from which they had been disenrolled.  <u>Envtl. Prot. Info. Ctr.,</u> <u>Inc. v. Pac. Lumber Co.</u>, 229 F. Supp. 2d 993, 1000 (N.D. Cal. 2002) (finding that the restraining order altered the relationship between the parties because it enjoined logging activities that had already begun). The fact that Defendants began disenrolling individuals from the State-funded health programs on August 31, 2009, but were ordered, on September 1, 2009, to re-enroll said individuals and to discontinue further disenrollment from the health programs, clearly demonstrates that the TRO did more than preserve the status quo.  <u>LSO</u>, 205 F.3d at 1161 (affirming the district court's determination that "[t]he legal relationship between the Defendants and LSO was legally altered because the TRO prevented the Defendants from

further interfering with the Art Exhibition'"
(alteration in original)).  On this basis alone, the
Court may deem Plaintiffs the "prevailing party."
Plaintiffs' benefits were preserved, and in some cases,
reinstated, following the issuance of the TRO.  The TRO
and TRO Stipulation forced Defendants to modify their
behavior, and such modification unquestionably
benefitted Plaintiffs.

     Despite Defendants' somewhat disingenuous
argument that their decision to review the BHH program
and promulgate draft rules pursuant to the HAPP was
purely voluntary and unrelated to orders issued by the
Court, it is evident that were it not for the
commencement of this action, Defendants would have
continued disenrolling Plaintiffs and other individuals
from State-funded health programs, Plaintiffs and said
individuals would have received lesser benefits under
BHH, effective September 1, 2009, and no review of BHH
or promulgation of draft rules would have taken place.
The TRO and TRO Stipulation enjoined Defendants from

taking away benefits and/or forced them to restore benefits until they complied with the appropriate procedural safeguards.  Consequently, both the TRO and TRO Stipulation resulted in a material alteration of the legal relationship between the parties by modifying Defendants' behavior in a way that directly benefits Plaintiffs.  Plaintiffs are accordingly the "prevailing party" in this action.

II. <u>Calculation of Attorneys' Fees</u>

        Having determined that Plaintiffs are the "prevailing party," the Court now assesses the amount of fees to which they are entitled.  Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in <u>Hensley v. Eckerhart</u>.  <u>See</u> <u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000).  The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  <u>Hensley</u>, 461 U.S. at 433.  Second, the court must decide whether to adjust the lodestar amount

based on an evaluation of the factors articulated in

<u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th

Cir. 1975), which have not already been subsumed in the

lodestar calculation.  <u>See</u> <u>Fischer</u>, 214 F.3d at 1119

(citation omitted).

The factors the Ninth Circuit articulated in

<u>Kerr</u> are:

> (1) the time and labor required, (2) the
> novelty and difficulty of the questions
> involved, (3) the skill requisite to
> perform the legal service properly, (4)
> the preclusion of other employment by the
> attorney due to acceptance of the case,
> (5) the customary fee, (6) whether the fee
> is fixed or contingent, (7) time
> limitations imposed by the client or the
> circumstances, (8) the amount involved and
> the results obtained, (9) the experience,
> reputation, and ability of the attorneys,
> (10) the "undesirability" of the case,
> (11) the nature and length of the
> professional relationship with the client,
> and (12) awards in similar cases.

<u>Kerr</u>, 526 F.2d at 70.  Factors one through five have

been subsumed in the lodestar calculation.  <u>See</u> <u>Morales</u>

<u>v. City of San Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir.

1996).  Further, the Ninth Circuit, extending <u>City of</u>

<u>Burlington v. Dague</u>, 505 U.S. 557, 567 (1992), held

14

that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation.  See <u>Davis v. City & County of San Francisco</u>, 976 F.2d 1536, 1549 (9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable.  See <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see also</u> <u>Fischer</u>, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiffs request the following attorneys' fees for work performed by their attorneys:

| <u>NAME</u> | <u>HOURS</u> | <u>RATE</u> | <u>TOTAL</u> |
|---|---|---|---|
| M. Victor Geminiani | 48.7 | $350.00 | $17,045.00 |
| Elizabeth M. Dunne | 119.9 | $225.00 | $26,977.50 |
| Jennifer Albertson | 7.4 | $125.00 | $925.00 |
| Erica Dickey | 20.1 | $125.00 | $2,512.50 |
| Paul Alston | 23.6 | $585.00 | $13,806.00 |

| David A. Nakashima | 1.1 | $350.00 | $385.00 |
|---|---|---|---|
| J. Blaine Rogers | 71.3 | $175.00 | $12,477.50 |
| Zachary A. McNish | 15.9 | $175.00 | $2,782.50 |
| Brandon M. Segal | 13.7 | $125.00 | $1,712.50 |
| **TAX (4.00%)** | | | $1,898.40[5] |
| **TOTALS** | 321.7 | | $80,521.90 |

The Court is now tasked with determining the reasonableness of the requested hourly rates and time expended.

A.   Reasonable Hourly Rate

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.;

---

[5]  Only Lawyers for Equal Justice ("LEJ") has included tax in the fee request.

16

<u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992), <u>as amended on denial of reh'g</u>, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  <u>See</u> <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).

Mr. Geminiani has practiced law since 1969; Ms. Dunne has been admitted to practice since 2001; Ms. Albertson and Ms. Dickey have been admitted to practice since 2007; Mr. Alston has been admitted to practice since 1971; Mr. Nakashima has been admitted to practice since 1977; Mr. Rogers and Mr. McNish have been admitted to practice since 2006; and Mr. Segal graduated from law school in May 2009.  <u>See</u> Mot., Decl. of Elizabeth M. Dunne at ¶ 9; <u>id.</u>, Decl. of J. Blaine Rogers at ¶ 5.

This Court is well aware of the prevailing rates in the community for similar services performed by attorneys and paralegals of comparable experience, skill and reputation.  Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and the attorneys' submissions, this Court finds that Ms. Albertson and Ms. Dickey's requested hourly rate of $125.00 is manifestly reasonable.  However, the Court finds that the hourly rates requested by the other attorneys exceed this community's prevailing rates.  Accordingly the Court hereby adjusts said hourly rates and finds that the following rates are reasonable:  Mr. Geminiani - $285; Ms. Dunne - $ 185; Mr. Alston - $350; Mr. Nakashima - $285; Mr. Rogers - $150; Mr. McNish - $150; and Mr. Segal - $120.

B.    Hours Reasonably Expended

Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the

burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  See id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987), cert. denied, 484 U.S. 927 (1987)).  This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

Plaintiffs submit that their attorneys expended 158 hours for case development, investigation,

19

communications with client, co-counsel, and opposing counsel (98.1 hours by LEJ attorneys and 59.9 hours by Alston Hunt Floyd & Ing ("AHFI") attorneys); 15.1 hours for pleadings (8.6 hours by LEJ and 6.5 hours by AHFI); 137.6 hours for motions practice (86.5 hours by LEJ and 51.1 hours by AHFI); and 11.1 hours on Court Hearings (3 hours by LEJ and 8.1 hours by AHFI). Mot., Dunne Decl., Ex. 1; Mot., Rogers Decl., Ex. B. After carefully reviewing Plaintiffs' counsel's time submissions, the Court finds that a number of reductions are necessary.

1. <u>Excessive/Duplicate Billing</u>

The 321.7 hours expended on this case, which commenced on August 31, 2009, and was dismissed on January 12, 2010, is rather excessive. First, the Court finds that some of the time expended on case development and investigation was excessive. Although the Court recognizes the necessity of engaging in case development and investigation prior to the commencement of a lawsuit, the Court will deduct 1.7 hours expended

by Mr. Geminiani for case development and investigation.  The Court also deducts 0.8 hours billed for Mr. Geminiani's work on the client retainers, as such work is not compensable and should be subsumed in a firm's overhead.  <u>Black v. City, County of Honolulu</u>, Civil No. 07-00299 DAE-LEK, 2010 WL 653026, at *11 (D. Haw. Feb. 22, 2010) (finding that work on client agreements are not compensable, even though such work is necessary to the attorney and client's professional relationship, because it did not contribute to the litigation of the plaintiff's claims).

Second, the Court reduces the attorneys' hours for meetings, discussions, and other communications, for which multiple attorneys billed.  The general rule is that two professionals cannot bill for attending the same meeting.  <u>Brandon E. v. Dep't of Educ., State of Hawaii</u>, No. CV 07-00536 ACK-LEK, 2008 WL 4602533, at *3 (D. Haw. Oct. 16, 2008).  Thus, when a party's counsel meet with one other, the Court deducts the duplicative time billed.  <u>Id.</u>; <u>In re Mullins</u>, 84 F.3d 459, 467

(D.C. Cir. 1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together)).  After reviewing the time entries in this case, the Court notes that not all communications between Plaintiffs' counsel resulted in duplicate billings, but reductions are warranted in those instances where multiple attorneys submitted billings for the same communications/meetings.[6]  The reductions are as follows:  Mr. Geminiani - 1.6 hours; Ms. Dunne - 6.9 hours; Mr. Rogers - 5.9 hours; and Mr. McNish - 2.2 hours.

Similarly, the Court finds duplicative the hours billed for multiple attorneys attending hearings and status conferences.  Mr. Alston, Mr. Geminiani, Mr. Rogers, and Mr. McNish submitted time entries for attending the hearing on the TRO hearing.  The Court will allow Mr. Rogers' time, as he argued the motion.

---

[6]  For example, on September 22, 2009, Ms. Dunne, Mr. McNish, and Mr. Rogers billed time for a conference.  Ms. Dunne's time is allowable, but Mr. McNish and Mr. Rogers' time is duplicative.

The Court will also allow a portion of Mr. Alston's time, inasmuch as he made a limited contribution to the arguments at the hearing.   However, the Court deducts the hours billed by the other attending attorneys.   <u>See Sheffer v. Experian Info. Solutions, Inc.</u>, 290 F. Supp. 2d 538, 546 (E.D. Pa. 2003) (disallowing fees for mere attendance at deposition).

With respect to the September 14, 2009, and December 14, 2009 status conferences, the Court allows Mr. Nakashima's time, and Ms. Dunne's time, respectively, but deducts the duplicative time expended by the other attorneys in attendance.   <u>Id.</u>   Co-counsel's attendance at hearings and status conferences is understandable, but the resulting duplicative fees should not be taxed against Defendants.   The Court therefore reduces Mr. Alston's hours by 0.5; Mr. Geminiani's hours by 1.8; Mr. Rogers' hours by 2.1; and Mr. McNish's hours by 2.6.

2.   <u>Clerical or Ministerial Tasks</u>

Several time entries reflect billing for clerical/ministerial work and are non-compensable. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." <u>Jeremiah B. v. Dep't of Educ.</u>, Civil No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing <u>Sheffer</u>, 290 F. Supp. 2d at 549). Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable. <u>Id.</u> (finding that entries for communications about, and internal office management of, hearing dates and due dates are clerical in nature); <u>Nicholas M. ex rel. Laura M. v. Dep't of Educ., Hawaii</u>, Civ. No. 09-00162 HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21, 2010) (finding that tasks such as informing a client that a document has been filed or informing client of a hearing date is

24

clerical or ministerial); <u>Hawaii Carpenters Trust Funds</u> <u>v. Cosier Const., Inc.</u>, Civil No. CV 08-00442 SOM-LEK, 2009 WL 291188, at *3 (D. Haw. Feb. 03, 2009) (finding that review of district court filing notices are clerical and non-compensable); <u>Bandalan v. Castle &</u> <u>Cooke Resorts, LLC</u>, Civil No. 07-00591 DAE-LEK, 2009 WL 1955328, at *5 (D. Haw. June 30, 2009) (clerical tasks include reviewing notices of the date and time for motions hearings and notices of filing deadlines); <u>Black</u>, 2010 WL 653026, at *12 (deeming clerical tasks such as traveling to court to check for form and filing complaint); <u>Young v. Geico Indem. Co.</u>, Civ. No. 08-00171 JMS/KSC, 2009 WL 3049640, at *8 (D. Haw. Sept. 23, 2009) (communications with the court are clerical and not compensable).

Consequently, the Court makes the following reductions:  Mr. Geminiani - 0.6 hours; Mr. Alston - 0.2 hours;[7] Mr. Rogers - 0.7 hours; and Mr. McNish - 1.3

---

[7]  Mr. Alston billed 0.1 hours for the time entry dated 9/30/09 - "Review notice of status conference; review stipulation for extension of TRO."  Only the first task is clerical.  However, because this entry is

hours.

### 3.   Inadequate Entries

Although counsel's time entries are in large part sufficiently descriptive, there are a few entries that must be excluded due to inadequate descriptions.[8] Local Rule 54.3(d)(2) requires that the "party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated."  Local Rule 54.3(d)(2).  The Court therefore makes the following reductions:  Mr. Geminiani - 1 hour; Mr. Alston - 0.6 hours; Mr. Nakashima - 0.5 hours; and Mr. Rogers - 1.5 hours.

### 4.   Block Billing

Finally, the Court must reduce some of the requested hours due to "block billing."  "The term

---

block billed, the Court cannot apportion the time and will deduct it in full.

[8]  For example, one of Mr. Geminiani's 8/28/09 time entries stated "Emails with Gmassengale."  This description fails to identify the subject of the email. Local Rule 54.3(d)(2) (providing example that "time entries for telephone conferences must include an identification of all participants and the reason for the call").

'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.  Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  See also id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time

records in a manner that will enable a reviewing court to identify distinct claims")).  Indeed, it is a challenge to determine the reasonableness of a time entry when it includes several tasks.

The use of block billing here makes it difficult, if not impossible, for the Court to determine the reasonableness of the hours expended with respect to specific time entries.  Accordingly, the Court imposes an across-the-board reduction of 15% as to the entries that are in the "block billing" format. The following hours were billed in this style:  Mr. Geminiani - 3 hours; Ms. Dunne - 19.8 hours; Ms. Albertson - 4 hours; Mr. Alston - 18.8 hours; and Mr. Segal - 7.2 hours.  A 15% reduction results in the following:  Mr. Geminiani - 2.55 hours; Ms. Dunne - 16.83 hours; Ms. Albertson - 3.4 hours; Mr. Alston - 15.98 hours; and Mr. Segal - 6.12 hours.

In accordance with the foregoing, the Court finds that the following hours were reasonably expended by counsel in this action: 1) Mr. Geminiani - 40.75; 2)

Ms. Dunne - 110.03; 3) Ms. Albertson - 6.8; 4) Ms.
Dickey - 20.1; 5) Mr. Alston - 19.48; 6) Mr. Nakashima
- 0.6; 7) Mr. Rogers - 61.1; 8) Mr. McNish - 9.8; and
9) Mr. Segal - 12.62.

   C.   Total Fee Award

      The Court is satisfied that Plaintiffs have
established the appropriateness of the following
attorneys' fees incurred in the present action, and the
Court declines to adjust this amount based on the Kerr
factors:

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| M. Victor Geminiani | 40.75 | $285.00 | $11,613.75 |
| Elizabeth M. Dunne | 110.03 | $185.00 | $20,355.55 |
| Jennifer Albertson | 6.8 | $125.00 | $850.00 |
| Erica Dickey | 20.1 | $125.00 | $2,512.50 |
| Paul Alston | 19.48 | $350.00 | $6,818.00 |
| David A. Nakashima | 0.6 | $285.00 | $171.00 |
| J. Blaine Rogers | 61.1 | $150.00 | $9,165.00 |
| Zachary A. McNish | 9.8 | $150.00 | $1,470.00 |

| Brandon M. Segal | 12.62 | $120.00 | $1,514.40 |
|---|---|---|---|
| **TAX (4.00%)** | | | $1,413.27[9] |
| **TOTALS** | 281.28 | | $55,883.47 |

The Court recommends that the district court award Plaintiffs **$55,883.47** in attorneys' fees - $36,745.07 for LEJ's work and $19,138.40 for AHFI's work.

III.    Costs

Plaintiffs also seek to recover $3,046.36 incurred for electronic legal research expenses.  Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs--other than attorneys' fees--should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Courts have discretion to award costs pursuant to Rule 54(d).  See Yasui v. Maui Electric Co., Ltd., 78 F. Supp. 2d 1124, 1126 (D. Haw. 1999).  The burden is on the losing party to demonstrate why costs should not be awarded.  Stanley

---

[9]  As discussed above, this tax applies only to the fees requested by LEJ.

v. Univ. of Southern California, 178 F.3d 1069, 1079

(9th Cir. 1999).

While the court's discretion to award costs is

ordinarily limited by the strictures of 28 U.S.C.

§ 1920, Yasui, 78 F. Supp. 2d at 1126, "[i]t is well

established that attorney's fees under 42 U.S.C. § 1988

include reasonable out-of-pocket litigation expenses

that would normally be charged to a fee paying client,

even if the court cannot tax these expenses as 'costs'

under 28 U.S.C. § 1920." Trustees of Constr. Indus.

and Laborers Health and Welfare Trust v. Redland Ins.

Co., 460 F.3d 1253, 1257, 1258 (9th Cir. 2006) (holding

that "reasonable charges for computerized research may

be recovered as 'attorney's fees' under § 1132(g)(2)(D)

if separate billing for such expenses is 'the

prevailing practice in the local community'"). Thus,

electronic legal research costs "not recoverable under

28 U.S.C. § 1920 may be recoverable . . . as

out-of-pocket litigation expenses reimbursable as part

of (or "incidental to") an award of attorneys' fees

under some provision or authority other than § 1920."
<u>Aloha Tower Assocs. Piers 7, 8 and 9, Ltd. P'ship v.</u>
<u>Millennium Aloha, Inc.</u>, 938 F. Supp. 646, 650 (D. Haw.
1996); <u>Redland</u>, 460 F.3d at 1258 (quoting <u>Case v.</u>
<u>Unified Sch. Dist. No. 233</u>, 157 F.3d 1243, 1257-58
(10th Cir. 1998) ("Reasonable expenses incurred in
representing a client in a civil rights case [such as
Westlaw charges] should be included in the attorney's
fee award if such expenses are usually billed in
addition to the attorney's hourly rate.")).

Mr. Rogers has represented, and AHFI's invoice
indicates, that electronic legal research charges are
out of pocket expenses that are charged to fee paying
clients.  Mot., Rogers Decl. at ¶ 10; <u>id.</u>, Ex. A at 10.
Because the recovery of fees permitted under § 1988
include reasonable out-of-pocket litigation expenses
that would normally be charged to a fee paying client,
the Court finds that Plaintiffs are entitled to
$3,046.36 in electronic legal research costs as part of
their attorneys' fees.

32

<u>CONCLUSION</u>

Based on the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses, filed January 26, 2010, and award Plaintiffs **$55,883.47** in attorneys' fees and **$3,046.36** in expenses, for a total of **$58,929.83.**

The parties are advised that any objection to this Report is due twenty-four (24) calendar days after being served with a copy of this Report.  <u>See</u> Fed. R. Civ. P. 5(b)(2) & 6(d); Local Rule 53.2.  If an objection is filed with the Court, it shall be captioned "Objections to Magistrate Judge's Report of Special Master."  A copy of the objection shall be served on all parties.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, March 5, 2010.



_____
Kevin S.C. Chang
United States Magistrate Judge


CV 09-00409 JMS-KSC; <u>Sound, et al. v. Koller, et al.</u>; REPORT OF
SPECIAL MASTER RECOMMENDING THAT PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND NON-TAXABLE EXPENSES BE GRANTED IN PART AND
DENIED IN PART