IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MANUEL D. SOUND and THOMPSON PHILLIP, each individually and on behalf of those persons similarly situated, | ) ) ) ) | CIVIL NO. 09-00409 JMS/KSC |
| | ) | ORDER: (1) AFFIRMING REPORT |
| Plaintiffs, | ) ) | OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFFS' MOTION FOR |
| | ) | ATTORNEYS' FEES AND NON- |
| vs. | ) | TAXABLE EXPENSES BE |
| | ) | GRANTED IN PART AND DENIED |
| LILLIAN B. KOLLER, in her | ) | IN PART; AND (2) GRANTING IN |
| official capacity as Director of the | ) | PART AND DENYING IN PART |
| State of Hawaii, Department of | ) | PLAINTIFFS' SUPPLEMENTAL |
| Human Services, and KENNETH | ) | REQUEST FOR ATTORNEYS' |
| FINK, in his official capacity as State | ) | FEES AND COSTS |
| of Hawaii, Department of Human | ) | |
| Services, Med-QUEST Division | ) | |
| Administrator | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER: (1) AFFIRMING REPORT OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES BE GRANTED IN PART AND DENIED IN PART; AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' SUPPLEMENTAL REQUEST FOR ATTORNEYS' FEES AND COSTS**

## I.  INTRODUCTION

On March 5, 2010, U.S. Magistrate Judge Kevin S.C. Chang filed his

Report of Special Master Recommending That Plaintiffs' Motion for Attorneys'

Fees and Non-Taxable Expenses Be Granted in Part and Denied in Part (the "March 5 Report"). The March 5 Report found that Plaintiffs are entitled to attorneys' fees because they became "prevailing parties" in this 42 U.S.C. § 1983 action when they obtained a September 1, 2009 Temporary Restraining Order ("TRO") and September 30, 2009 Stipulation for Extension of Temporary Restraining Order ("TRO Stipulation"). As a result of Plaintiffs' prevailing party status, the March 5 Report further recommends that Plaintiffs be awarded $55,883.47 in attorneys' fees and $3,046.36 in costs.

Currently before the court are Defendants' Amended Objections to the March 5 Report, in which they argue that Plaintiffs are not "prevailing parties." Plaintiffs disagree, and request an additional $12,888.09 in attorneys' fees and $1,555.50 in costs in bringing their Motion for Attorneys' Fees and responding to Defendants' Amended Objections ("Pls.' Supplemental Request"). Based on the following, the court AFFIRMS the March 5 Report, and GRANTS in part and DENIES in part Plaintiffs' Supplemental Request, awarding Plaintiffs an additional $9,638.72 in attorneys' fees and an $1,555.50 in costs.

## II. BACKGROUND

On August 31, 2009, Plaintiffs filed this action against Defendants for violation of the due process clause and the equal protection clause of the

Fourteenth Amendment stemming from Defendants' decision to decrease the level of medical benefits of certain individuals residing in Hawaii under the Compact of Free Association ("COFA") as well as immigrants who have been U.S. residents for less than five years ("New Residents").  These individuals had originally been enrolled in state medical benefit plans including QUEST, QUEST-Net, QUEST-ACE, QexA, SHOTT, or fee-for service programs, but Defendants had announced that effective September 1, 2009, they would be enrolled in Basic Health Hawaii, a plan that provided fewer benefits.

Also on August 31, 2009, Plaintiffs filed a their Motion for TRO.  On September 1, 2009, the court found that Plaintiffs showed a likelihood of success on the merits of their due process claim and that the other applicable factors weighed in favor of Plaintiffs.  Accordingly, the court issued a TRO, ordering Defendants to:

1.    Stop disenrolling COFA residents and New Residents from the State-funded health programs in which they were participating prior to August 1, 2009; and

2.    re-enroll all COFA residents and New Residents who were disenrolled based on their status as COFA residents and/or New Residents in the applicable QUEST, QUEST-Net, QUEST-ACE, QexA, SHOTT, or fee-for service programs.

Doc. No. 10, at 11.

The court further set Plaintiffs' Motion for Preliminary Injunction for October 22, 2009.  This date came off calendar, however, after the parties agreed to the TRO Stipulation, which the court signed on September 30, 2009.  In the TRO Stipulation, Defendants represented that any future changes to the State-funded medical assistance program would be made in compliance with the Hawaii Administrative Procedures Act ("HAPA"), and that Defendants would agree to extend the TRO until the HAPA rulemaking process was complete.  Doc. No. 20.

On January 12, 2010, the court approved a Stipulation for Voluntary Dismissal Without Prejudice.

On January 26, 2010, Plaintiffs filed their Motion for Attorneys' Fees.  Defendants filed their Opposition on February 3, 2010, and Plaintiffs filed their Reply on February 17, 2010.  After the March 5 Report issued, Defendants filed their Amended Objections[1] on April 1, 2010.  On April 16, 2010, Plaintiffs filed their Response and request for supplemental fees and costs.[2]  On May 3, 2010, Defendants filed a Reply.

---

[1]  The court struck Defendants' initial Objections, filed on March 29, 2010, because the Objections attempted to incorporate arguments made in previous filings without identifying specific arguments.  *See* Doc. No. 34.

[2]  Because the Response miscalculated the amount of fees requested, on April 23, 2010, Plaintiffs filed a clarification of the fees they are requesting.  Doc. No. 40.

4

### III.  <u>STANDARD OF REVIEW</u>

In acting on a special master's report, the district court must afford an opportunity to be heard and may receive evidence.  Fed. R. Civ. P. 53(f)(1).  The district court may "adopt or affirm; modify; wholly or partly reject or reverse, or resubmit to the master with instructions."  *Id*.  The district court must decide de novo all objections to findings of fact and/or conclusions of law made or recommended by the special master.  Fed. R. Civ. P. 53(f)(3) & (4).

### IV.  <u>DISCUSSION</u>

Defendants' Amended Objection and Plaintiffs' Response raise two issues: (1) whether Plaintiffs are "prevailing parties" pursuant to 42 U.S.C. § 1988 such that they are entitled to attorneys' fees and costs; and (2) assuming Plaintiffs are entitled to their attorneys' fees and costs, the reasonable amount of attorneys' fees and costs incurred since the time of Plaintiffs' initial fee request.[3]  The court addresses each argument in turn.

**A.     Entitlement to Attorneys' Fees**

Plaintiffs assert that they are entitled to attorneys' fees pursuant to 42 U.S.C. § 1998(b), which provides that in an action to enforce § 1983, "the court, in

---

[3]  Defendants do not object to the March 5 Report's secondary determination awarding Plaintiffs $55,883.47 in attorneys' fees and $3,046.36 in costs, and the court does not review this determination.

its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

"A party is a 'prevailing party' when '(1) it wins on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff.'" *UFO Chuting of Haw. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007) (quoting *Martinez v. Wilson*, 32 F.3d 1415, 1421-22 (9th Cir. 1994)); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("A typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (citation and quotation signals omitted)); *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *see also Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007).

Obtaining injunctive relief may be sufficient to accord a party prevailing party status -- "[a] final judgment on the merits is not a condition precedent to obtaining the status of a 'prevailing party.'" *UFO Chuting of Haw.*, 508 F.3d at 1197.  Indeed, "a party has prevailed on the merits of at least some of

6

[its] claims, when it has obtained a preliminary injunction that results in a direct and substantial benefit." *Id.* (citation and quotation signals omitted). As for TROs, "the standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction," *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002), and the issuance of a TRO may afford a party prevailing party status so long as it does not merely maintain the status quo. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160-61 (9th Cir. 2000).

Based upon a de novo review, the court agrees with the March 5 Report's determination that the TRO and Stipulation for TRO afforded Plaintiffs prevailing party status.

First, the TRO and TRO Stipulation gave Plaintiffs relief on the merits of their due process claim. The TRO found that Plaintiffs had shown a likelihood of success on the merits of proving a property interest in the continued level and quality of medical benefits they received under their current medical benefit programs and that they have been denied adequate procedural safeguards in Defendants' decision to reduce the level of their health care benefits. The court therefore ordered Defendants to stop disenrolling COFA residents and New Residents from the State-funded health programs, and re-enroll all COFA residents

and New Residents who were disenrolled based on their status as COFA residents

and/or New Residents.  The Stipulated TRO extended this relief until Defendants

completed the HAPA process, effectively providing Plaintiffs the relief they

requested on their due process claim -- *i.e.*, injunctive relief ceasing Defendants'

alleged violations of Plaintiffs' due process rights.

Second, the injunctive relief granted (and later extended by the

parties) materially altered the legal relationship between the parties by modifying

Defendants' behavior.  The TRO and TRO Stipulation did more than merely

maintain the status quo -- they altered the legal relationship between the parties by

requiring Defendants to stop disenrolling individuals and re-enroll individuals that

Defendants had disenrolled.  The TRO Stipulation, while technically voluntarily

entered into by the parties, further modified Defendants' behavior because

Defendants now cannot change these individuals' benefits until after completing

the HAPA process.  *See, e.g.*, *LSO, Ltd.*, 205 F.3d at 1161 (finding that plaintiffs

were prevailing parties where "[t]he legal relationship between the Defendants and

LSO was legally altered because the TRO prevented the Defendants from further

interfering with the Art Exhibition" (quoting district court decision)).

Finally, the TRO and TRO Stipulation directly benefitted Plaintiffs.

The TRO and TRO Stipulation ensured that Plaintiffs would receive medical

benefits that Defendants had begun to terminate before Plaintiffs brought this action.  Plaintiffs received precisely the relief they sought by bringing this action.  *See Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980) (finding that plaintiffs were prevailing parties where the preliminary injunction granted achieved the benefit they sought in bringing the action).  Accordingly, Plaintiffs are prevailing parties for purposes of 42 U.S.C. § 1988(b).

In opposition, Defendants cite *Buckhannon v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), as requiring that a plaintiff obtain either a judgment on the merits or a consent decree to obtain "prevailing party" status.  This narrow construction of *Buckhannon*, however, has been squarely rejected in this Circuit.  *See Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 n.5 (9th Cir. 2002) ("While dictum in *Buckhannon* suggests that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, 121 S.Ct. at 1840 n.7, we are not bound by that dictum . . . .").

Rather, the question presented in *Buckhannon* was whether a claimant could receive "prevailing party" status under a "catalyst theory," *i.e.*, where the claimant "failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought

about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at

600. *Buckhannon* rejected that the catalyst theory was "a permissible basis for the

award of attorney's fees" under the two federal statutes in question. *Id*. at 610.

Instead, the Court recognized that "a 'prevailing party' is one who has been

awarded some relief by the court," *id*. at 603 -- which is precisely what happened

in this action.

Defendants further argue that the cases cited in the March 5 Report

predate *Buckhannon* so that their precedential value is questionable, and that cases

since *Buckhannon* have denied fees unless there is a judgment on the merits or its

equivalent. Defs.' Obj. 10-12. Defendants' position is incorrect. The March 5

Report correctly relied on cases predating *Buckhannon* because, as described

above, *Buckhannon* addressed the catalyst theory -- a concept inapplicable to this

action. Accordingly, *Buckhannon* leaves untouched this Circuit's determination

that a TRO may afford an individual prevailing party status. *See LSO, Ltd.*, 205

F.3d at 1160-61; *see also Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)

(finding that only "where the reasoning or theory of our prior circuit authority is

clearly irreconcilable with the reasoning or theory of intervening higher authority,

a three-judge panel should consider itself bound by the later and controlling

authority, and should reject the prior circuit opinion as having been effectively

10

overruled"). Further, since *Buckhannon*, this Circuit has expressly recognized that

"a preliminary injunction carr[ies] the 'judicial imprimatur' necessary to satisfy

*Buckhannon*," and has allowed prevailing party status under such circumstances.

*Tipton-Whittingham v. City of Los Angeles*, 316 F.3d 1058, 1062 (9th Cir. 2003);

*see also Taylor v. Westly*, 525 F.3d 1288, 1290 (9th Cir. 2008); *Watson v. County

of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (stating that obtaining a

preliminary injunction suffices to be deemed a prevailing party under 42 U.S.C.

§ 1988).

In sum, consideration of *Buckhannon* does not change this court's

analysis and determination that Plaintiffs are prevailing parties. Indeed, Plaintiffs

do not claim "prevailing party" status by being a catalyst of voluntary policy

change. Rather, the TRO and TRO Stipulation changed the parties' legal

relationship as described above and both the TRO and TRO Stipulation are legally

enforceable. Accordingly, the court finds that Plaintiffs are prevailing parties and

entitled to attorneys' fees.

## B.     Supplemental Attorneys' Fees

In addition to the $55,883.47 in attorneys' fees and $3,046.36 in costs

recommended by the March 5 Report, Plaintiffs seek supplemental fees that they

have since incurred. The court addresses this supplemental request, calculating an

award for attorneys' fees using the "lodestar" method set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

The lodestar calculation should "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010).  The fee should be "reasonable" -- "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.*  Especially as to § 1988 claims, the award should help in enforcing "civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys." *Id.* (quotation and citation signals omitted).

The lodestar calculation has two parts.  First, the court calculates the lodestar "by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quotations omitted).  In determining the reasonable hours, the "court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434).

12

Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.[4]  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high."  *Van Gerwen*, 214 F.3d at 1045 (citation and quotation signals omitted).

---

[4]  The *Kerr* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Factors one through five have been subsumed in the lodestar calculation.  *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Further, the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation.  *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

### 1.    *Reasonableness of Fees Requested - Lodestar Calculation*

Only hours reasonably expended are considered in the lodestar calculation.

As the United States Supreme Court explained:

> The district court . . . should exclude from this initial fee
> calculation hours that were not reasonably expended.
> Cases may be overstaffed, and the skill and experience of
> lawyers vary widely.  Counsel for the prevailing party
> should make a good faith effort to exclude from a fee
> request hours that are excessive, redundant, or otherwise
> unnecessary, just as a lawyer in private practice ethically
> is obligated to exclude such hours from his fee
> submission.  In the private sector, 'billing judgment' is an
> important component in fee setting.  It is no less
> important here.  Hours that are not properly billed to
> one's *client* also are not properly billed to one's
> *adversary* pursuant to statutory authority.

*Hensley*, 461 U.S. at 434 (citations omitted).  Plaintiffs, as the prevailing party

seeking attorneys' fees, bear the burden of proving that the fees and costs taxed are

associated with the relief requested and are reasonably necessary to achieve the

results obtained.  *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632,

636 (D. Haw. 1993) (citations omitted).

Plaintiff seek the following attorneys' fees based on the hourly rates

found reasonable in the March 5 Report:

///

///

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Paul Alston | 1 | $350 | $350 |
| J. Blaine Rogers | 46.1 | $150 | $6,915 |
| Zachary A. McNish | 11.6 | $150 | $1,740 |
| Elizabeth Dunne | 6 | $185 | $1,110.00 |
| Erica Dickey | 18.1 | $125 | $2,262.50 |
| TAX[5] | | | $510.59 |
| TOTALS | 82.8 | | $12,888.09 |

These hours, billed by two separate sets of counsel -- a firm, Alston

Hunt Floyd & Ing, and Lawyers for Equal Justice -- were spent on (1) applying the

finishing touches of their Motion for Attorneys' Fees; (2) drafting a statement of

consultation pursuant to Local Rule 54.3(b); (3) drafting their Reply in support of

their Motion for Attorneys' Fees; (4) reviewing the March 5 Report and

Defendants' Objections; and (5) drafting their Response to Defendants'

Objections.  Defendants object, arguing that the time billed is excessive.  After

carefully reviewing the fee request, the court finds that a number of reductions are

necessary.[6]

---

[5]  Both Lawyers for Equal Justice and the law firm of Alston Hunt Floyd & Ing have
included tax in the fee request, with LEJ calculating tax at four percent ($134.90), and Alston
Hunt calculating tax at 4.172 percent ($375.69).

[6]  Because the parties do not dispute the March 5 Report's determination of reasonable
hourly rates, the court does not disturb this determination, and addresses only the reasonableness
of the hours expended.

15

a.      *Excessive/duplicative billing*

As a result of having two sets of counsel, multiple attorneys worked on the same tasks -- for example, all five attorneys billed for working on the Reply as well as for reviewing various papers.  The court certainly recognizes that complex litigation often requires the participation of multiple attorneys, *see Davis v. City & County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993), but at this point in the litigation, the only issue remaining was whether Plaintiffs are prevailing parties and entitled to their fees.

As a result of having multiple attorneys working on this matter and appearing to carry out the same and/or similar tasks, the hours billed are excessive -- this discrete issue could have been handled by one or two competent attorneys, which would have cut down time in attorneys getting up to speed, researching, reviewing papers, and otherwise contributing to this straightforward issue.  *See id.* (providing that "the familiarity of a district court with the underlying litigation warrants considerable deference to its findings on such matters as whether the hours claimed by prevailing counsel are redundant"); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 858 (7th Cir. 2009) (stating that "overstaffing cases inefficiently is common, and district courts are therefore

16

encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees"); *see also Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.").

A review of the time Plaintiffs' counsel spent on each task reveals the excessiveness of the hours spent.  For Plaintiffs' ten-page Reply, Mr. Alston spent 0.6 hours reviewing and revising the Reply, Mr. Rogers spent 13.1 hours drafting and revising the Reply, Mr. McNish spent 1.8 hours revising the Reply, Ms. Dunne spent 4.6 hours drafting and revising the Reply, and Ms. Dickey spent 7.9 hours researching and drafting the Reply.  Having five different attorneys contribute to this Reply necessarily caused redundant work and excessive billing -- Plaintiffs had already briefed the relatively simple issue of prevailing party status and the Reply needed only to address Defendants' counterarguments.  An attorney would be hard-pressed to rationalize to a paying client why the Reply took five attorneys and 28 hours.  The Reply simply did not require such thorough vetting, and it is unreasonable to compensate Plaintiffs' attorneys for this excessive time billed.  Given these considerations, the court believes reducing these hours by thirty percent will resolve these redundancies and excessive billing.  The court therefore reduces Mr. Alston's time by 0.2 hours, Mr. Rogers' time by 3.9  hours, Mr.

McNish's time by 0.5 hours, Ms. Dunne's time by 1.4 hours, and Ms. Dickey's time by 2.4 hours.

The hours billed for Plaintiffs' Response to Defendants' Objections suffer from similar problems. While only three attorneys billed time on this brief, at this point Plaintiffs had already written two briefs on the issue of prevailing party status and had the benefit of the March 5 Report agreeing with their position. Mr. Rogers nonetheless spent 17.5 hours drafting and revising the Response, Mr. McNish spent 1.2 hours reviewing and editing the Response, and Ms. Dickey spent 8.6 hours researching and drafting part of the Response. Given the simplicity of this issue and the familiarity Plaintiffs' counsel had with this issue by this time, a reasonable client would not expect to be charged 27.3 hours for this task. The court again reduces the time billed by thirty percent, reducing Mr. Roger's time by 5.3 hours, Mr. McNish's time by 0.4 hours, and Ms. Dickey's time by 2.6 hours.

The court also finds excessive the time spent reviewing the March 5 Report and papers filed by Defendants. For each of the five attorneys to contribute to Plaintiffs' briefs, they all had to read and analyze these filings. As described above, however, having five attorneys work on these tasks was excessive. In total, each of the attorneys billed the following hours for reviewing papers: Mr. Alston 0.1 hours, Mr. Rogers 1.2 hours, Mr. McNish 0.3 hours, Ms. Dunne 0.9 hours, and

Ms. Dickey 0.3 hours.  Reducing these hours by thirty percent is necessary to prevent excessive billing, and the court therefore reduces Mr. Rogers' time by 0.4 hours, Mr. McNish's time by 0.1 hours, Ms. Dunne's time by 0.3 hours, and Ms. Dickey's time by 0.1 hours.[7]

Finally, having multiple attorneys work on this issue caused excessive billing due to the numerous communications necessary to keep all of the attorneys on the same page.  Even with only one attorney billing for the communication and/or conference in most instances, if only one or two attorneys had been working on this issue, then the communications would have been reduced significantly.  In total, for communications amongst counsel, Mr. Alston billed 0.1 hours, Mr. Rogers billed 3.8 hours, Mr. McNish billed 1.9 hours, and Ms. Dunne billed 0.3 hours  The court finds it reasonable to reduce these hours by thirty percent, reducing Mr. Rogers' time by 1.1  hours, Mr. McNish's time by 0.6 hours, and Ms. Dunne's time by 0.1 hours.

///

///

///

---

[7]  Because the court rounds to the nearest tenth of an hour, there is no deduction from Mr. Alston's time of 0.1 hour.

b.      *Paralegal duties carried out by attorneys*

Clerical and secretarial work is not compensable as attorneys' fees. *Davis*, 976 F.2d at 1543.  Both Mr. Rogers and Mr. McNish spent 1.9 and 1.3 hours respectively on tasks that are clerical in nature, such as "running a table of authorities," "finalizing []exhibits, and declarations," "compiling necessary exhibits," "rout[ing] courtesy copies to the USDC," and determining steps related to the court's issuance of a transcript.  *See* Rogers Decl. Ex. A.  Time spent on these tasks could easily have been carried out by a paralegal with a lower billing rate.  *See Aslam v. Malen & Assocs.*, 669 F. Supp. 2d 275, 277-78 (E.D.N.Y. 2009) (finding that hours spent preparing exhibits could have been carried out by paralegal and reducing hourly rate to that of a paralegal); *Davis v. N.Y. City Housing Auth.*, 2002 WL 31748586, at *3-4 (S.D.N.Y. Dec. 6, 2002) (substantially discounting attorney's rate for work, such as preparing exhibits and proofreading, that could have been done by paralegal).

The reasonable market billing rate for a paralegal in Hawaii ranges from $50 to $85 an hour.  *See Shaun M. ex rel. Kookie W. v. Hamamoto*, 2009 WL 5218032, at *5 (D. Haw. Dec. 31, 2009) (finding the hourly rate of $85 and $50 per hour reasonable for paralegal time); *Boles v. Engle*, 2009 WL 3763051, at *1 (D. Haw. Nov. 9, 2009) (finding $80 per hour the reasonable hourly rate for a

paralegal).  Accordingly, the court reduces the hourly rate for 1.3 hours of Mr.

McNish's time and 1.9 hours of Mr. Roger's time to $80 per hour.

### 2.      *Total Fee Award*

In all billing, an attorney must use both reason and judgment in

excluding those hours that are "excessive, redundant, or otherwise unnecessary" --

whether the bill is paid by a client or by the adversary due to fee-shifting.  *See*

*Hensley*, 461 U.S. at 434.  The court finds that the reductions discussed above

bring the hours billed down to what an attorney in private practice could

reasonably charge a paying client for the work performed.

In sum, the court is satisfied that Plaintiffs have established the

appropriateness of the following attorneys' fees incurred since filing their initial

fee request, and the court declines to adjust this amount based on the *Kerr* factors:

///

///

///

///

///

///

///

21

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Paul Alston | 0.8 | $350 | $280 |
| J. Blaine Rogers | 33.5 | $150 | $5,025 |
| | 1.9 | $80 | $152 |
| Zachary A. McNish | 8.7 | $150 | $1,305 |
| | 1.3 | $80 | $104 |
| Elizabeth Dunne | 4.2 | $185 | $777 |
| Erica Dickey | 13 | $125 | $1,625 |
| TAX (4%) | | | $370.72 |
| TOTALS | 63.8 | | $9,638.72 |

## C.     Costs

Plaintiffs seek to recover $1,555.50 incurred for electronic legal research expenses.  *See* Rogers Decl. ¶ 11.  Federal Rule of Civil Procedure 54(d)(1) provides that "costs -- other than attorney's fees -- should be allowed to the prevailing party."  Rule 54(d)(1) carries with it the presumption that a prevailing party will be awarded its costs, and the losing party has the burden to "establish a reason to deny costs."  *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006); *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999).

Electronic legal research expenses are recoverable under 42 U.S.C.

§ 1988 "if such expenses are usually billed in addition to the attorney's hourly rate." *See Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257-58 (9th Cir. 2006) (quotations and citation signals omitted)).  Mr. Rogers has represented, and AHFI's invoice indicates, that electronic legal research charges are out-of-pocket expenses that are charged to fee paying clients.  Rogers Decl. ¶ 11; *id*. Ex. A at 5.  Defendants have proffered no reason to deny Plaintiffs' these costs.  Accordingly, the court finds that Plaintiffs are entitled to $1,555.50 for their electronic legal research costs.

## V.  <u>CONCLUSION</u>

In sum, the court AFFIRMS the March 5, 2010 Report of Special Master Recommending That Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses Be Granted in Part and Denied in Part.  As outlined in the March 5 Report, the court awards Plaintiffs $55,883.47 in attorneys' fees and

///

///

///

///

///

///

23

$3,046.36 in costs.  The court further awards Plaintiffs an additional $9,638.72 in

supplemental attorneys' fees and $1,555.50 in costs.

　　　　　IT IS SO ORDERED.

　　　　　DATED:  Honolulu, Hawaii, May 19, 2010.



　　　　　　　　　　/s/ J. Michael Seabright
　　　　　　　　　　J. Michael Seabright
　　　　　　　　　　United States District Judge

*Sound et al. v. Koller et al.*, Civ. No. 09-00409 JMS/KSC, Order: (1) Affirming Report of
Special Master Recommending That Plaintiffs' Motion for Attorneys' Fees and Non-Taxable
Expenses Be Granted in Part and Denied in Part; and (2) Granting in Part and Denying in Part
Plaintiffs' Supplemental Request for Attorneys' Fees and Costs